**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 4673 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| MATTHEW ROBINSON, EDWIN NELSON, | ) | |
| and DELPHINE BRIDGES, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

The Court grants in part and denies in part Plaintiff William Simmons' and Defendants Matthew Robinson, Edwin Nelson, and Delphine Bridges' motions *in limine* [68, 72], with the exception of Simmons' first motion *in limine*, which the Court addresses in a separate Order. See Statement for further details.

## STATEMENT

**I.     Simmons' Motions *in Limine* [72]**

**1.     To Bar Evidence, Argument, or Cross-Examination Related to Simmons' Mental Health**

The Court addresses this motion in a separate Order.

**2.     To Bar Evidence, Argument, or Cross-Examination Related to Prior Lawsuits or Grievances Filed by Simmons**

Defendants have no objection to this motion.

The Court grants Simmons' motion *in limine* number 2.

**3.     To Bar Evidence, Argument, or Cross-Examination Regarding Medical Issues or Injuries Unrelated to this Lawsuit**

Defendants only object to this motion to the extent it overlaps with Simmons' request in his first motion *in limine*.

Setting aside the issue of Simmons' mental health, which the Court addresses in its Order regarding Simmons' first motion *in limine*, the Court grants Simmons' motion *in limine* number 3.

### 4. To Bar Evidence, Argument, or Cross-Examination Related to Simmons' Prior Felony Convictions

Simmons argues that the Court should bar admission of his two prior felony convictions (which occurred within the past ten years) because to admit them would be unduly prejudicial under Federal Rule of Evidence 403. Defendants respond that the convictions are relevant to Simmons' credibility as a witness and the probative value outweighs any potential prejudice that may result from admission of Simmons' two convictions.

Rule 609 provides the guidelines for admitting evidence of a criminal conviction to attack a witness' character for truthfulness. Convictions within ten years "for a crime that, in the convicting jurisdiction, was punishable by death or imprisonment for more than one year, the evidence . . . must be admitted, subject to Rule 403, in a civil case or a criminal case in which the witness is not a defendant." Fed. R. Evid. 609(a). In the past ten years, Simmons has two felony convictions for drug-related crimes. Thus, the Court must decide whether the convictions' prejudicial effects "substantially outweigh" their probative value—otherwise, the convictions are admissible. Fed. R. Evid. 403.

In criminal cases, the Seventh Circuit relies on five factors to determine whether the probative value of a conviction outweighs its prejudicial effect: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004). "While not all of these factors will apply in civil cases, the same general concerns may illuminate the court's analysis." *Buchanan v. McCann*, No. 08 C 7063, 2012 WL 1987917, at *1 (N.D. Ill. June 4, 2012). The Court must conduct this analysis while keeping in mind the Seventh Circuit's warning "'to be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her.'" *Id.* (quoting *Gora v. Costa*, 971 F.2d 1325, 1331 (7th Cir. 1992)).

Here, the impeachment value of Simmons' prior drug possession convictions heavily favors exclusion—the convictions have little probative value other than the presumption inherent in Rule 609(a) that a convicted criminal is more likely to testify untruthfully. *Coles v. City of Chicago*, No. 02 C 9246, 2005 WL 1785326, at *3 (N.D. Ill. July 22, 2005) ("[T]here is nothing about a drug possession conviction in general, or anything that has been disclosed about the particular circumstances of plaintiff's conviction, that persuades us that the degree of probative value is anything other than limited."). The second factor favors admission, as the convictions fall within the requisite ten-year period in Rule 609. The third factor does not apply here.

The fourth and fifth factors somewhat favor admission. Simmons' testimony and credibility will be central to the case, given the he-said, she-said nature of the case. However, "convictions are not necessarily admissible when they have 'little, if anything, to do with credibility.'" *Fermazin v. Menard, Inc.*, No. 15 C 7272, 2017 WL 1227937, at *5 (N.D. Ill. Mar.

31, 2017) (quoting *Coles*, 2005 WL 1785326, at *2). Beyond generally arguing that Simmons'
drug possession convictions relate to his credibility, Defendants do not add any specifics as to
why these convictions would affect Simmons' credibility as a witness. As in *Fermazin*, it
appears that the "only real purpose of admitting the conviction would be to tar Plaintiff" as a
felon. *Id.* The risks here are obvious: admitting evidence of Simmons' prior felonies creates the
chance that the jury will view him as an "unsympathetic member of the criminal class" who is
undeserving of recovery for civil rights violations. *Id.* In this case, the jury will already know
that Simmons was incarcerated at the time of the incident alleged, which reduces the probative
value of Simmons' prior convictions and increases the risk of unfair prejudice. In light of the
nature of Simmons' prior convictions and the details of the current case, the danger of prejudice
substantially outweighs the limited probative value of the convictions and the Court will not
admit them at trial.

The Court grants Simmons' motion *in limine* number 4. If Defendants can provide more
detail as to Simmons' convictions and want to raise the issue at the pretrial conference, they may
do so.

**5.     To Permit Simmons to Treat Certain Witnesses as Adverse Witnesses**

Simmons seeks to treat the following witnesses as adverse witnesses: (1) Dr. Sunita
Williamson, the treating physician in this case employed by Cermak Health Services of Cook
County ("Cermak"), the medical provider for detainees at Cook County Jail; (2) Elizabeth
Santos, a nurse who treated Simmons, also employed by Cermak; and (3) Scott Bratlien, the
former Superintendent of Division 11, employed by the Cook County Sheriff's Department.
Defendants respond that neither Cook County nor the Cook County Sheriff's Department are
parties in this case, and none of those witnesses are closely aligned enough with Defendants to
merit treatment as adverse witnesses.

Rule 611(c) provides that the Court should allow leading questions "when a party calls a
hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid.
611(c)(2). "The normal sense of a person 'identified with an adverse party' has come to mean,
in general, an employee, agent, friend, or relative of an adverse party." *Ratliff v. City of
Chicago*, No. 10 C 739, 2012 WL 7993412, at *1 (N.D. Ill. Nov. 20, 2012) (internal quotation
marks omitted). "In addition to current employment, a witness is most likely to be treated as
adverse where he or she was employed at the time of the incident in question and had a hand in
the incident that resulted in suit." *Gibbons v. Vill. of Sauk Vill.*, No. 15 CV 4950, 2017 WL
4882334, at *4 (N.D. Ill. Oct. 30, 2017).

Defendants point out that neither Cook County nor the Cook County Sheriff's
Department are parties to the suit, and so Simmons cannot argue that the Defendants employed
any of the three witnesses. However, it is not necessary that the witnesses' employer be a
defendant for Simmons to treat them as adverse witnesses. *See Gomez v. Palmer*, No. 11 C
1793, 2016 WL 212800, at *4 (N.D. Ill. Jan. 19, 2016) (finding that a prison's medical director
and internal security officer were "sufficiently identified" with the defendant correctional officer,
prison sergeant, and prison nurse for the plaintiff to treat them as adverse witnesses); *Paradiso v.
Obaldo*, No. 07 CV 4247, 2009 WL 3272217, at *7 (N.D. Ill. Oct. 8, 2009) (acknowledging that

the plaintiff could potentially treat other police officers as adverse witnesses in a case against two police officers). Here, all three of these witnesses were involved in the events surrounding the incident. Although Bratlien has since left his employment at the Cook County Sheriff's Office (and that employment relationship apparently soured), he reviewed Simmons' initial grievances and denied them. Williamson and Santos treated Simmons after the incident. Although Defendants and the witnesses may not have known each other well, all three witnesses were involved in the described incident and were working to provide services to Cook County Jail (regardless of whether Cook County or the Cook County Sheriff's Office directly employed them). The three witnesses' current or former affiliation with Cook County Jail, combined with their involvement in the incident that resulted in this lawsuit, qualify them for treatment as witnesses adverse to Simmons.

The Court grants Simmons' motion *in limine* number 5.

**6.     To Permit Simmons to Impeach Bridges with her Prior Conviction**

The parties' positions regarding admissibility of prior convictions have now flipped. Simmons seeks to use Bridges' prior conviction for education loan fraud to impeach her, and Defendants respond that the Court should bar reference to Bridges' conviction because it is well over ten years old.

Under Rule 609, a conviction that is more than ten years old is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). The Seventh Circuit has instructed that "convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004). The Court considers the same factors that it would consider if the conviction were less than ten years old: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue." *Montgomery*, 390 F.3d at 1015; *see United States v. Williams-Ogletree*, No. 11 CR 203-3, 2013 WL 66207, at *7 (N.D. Ill. Jan. 4, 2013) (employing the five-part test to determine whether to admit a conviction older than ten years). However, rather than determining whether the unfair prejudice substantially outweighs the probative value, the Court must decide whether the probative value substantially outweighs the prejudicial effect.

Bridges was convicted in January 2003 of one count of education loan fraud and sentenced to probation. Thus, for the purposes of Rule 609, her conviction is over sixteen years old. Although the crime for which she has been convicted involved providing false statements to the government, which is certainly probative of a witness' credibility, the probative value of such a conviction decreases in light of the age of the conviction. In addition, Bridges has no subsequent convictions in her record. As noted above, the Court does not find the third factor in the test particularly relevant in this case. Similarly, Bridges' testimony is important and her credibility is central here, given the he-said, she-said nature of the case. However, as discussed in Simmons' seventh motion *in limine*, Simmons already has other, more recent material with which he can impeach Bridges' character for truthfulness. This is significant to the Court's

analysis because the sixteen-year-old conviction would be merely additional evidence on this point, and so its probative value decreases.

On the other hand, allowing evidence of this conviction exposes Bridges to a real risk of unfair prejudice. The jury may not properly account for the length of time that separates her conviction and her testimony at trial, and, as with Simmons, there is always the risk that informing a jury of former convictions will result in them viewing the witness as a criminal. On balance, given the age of the conviction and the fact that Simmons has other evidence to present on this matter, Simmons has not established that the probative value of this evidence would substantially outweigh the potential undue prejudice.

The Court denies Simmons' motion *in limine* number 6.

### 7.    To Permit Simmons to Introduce Evidence and Testimony Regarding Misconduct by Bridges and Robinson

Simmons also seeks to admit evidence and testimony regarding instances of misconduct committed by Bridges and Robinson. In addition to Bridges' 2003 conviction, Simmons seeks to admit evidence and testimony regarding (1) a 2003 Merit Board Decision finding that Bridges violated applicable general orders, rules, and regulations as a result of the false statements that resulted in her 2003 conviction; (2) a 2005 Merit Board Decision finding that Robinson violated a general order prohibiting correctional officers from accepting money from strangers; (3) a 2015 Merit Board Decision finding that Robinson failed to fill out an appropriate incident report after witnessing another officer use excessive force on an inmate and that despite Robinson and Bridges' testimony before the Merit Board on this matter, video evidence established that Robinson was present when the other officer used excessive force; and (4) a 2018 Merit Board Decision finding that Bridges used excessive force on an inmate and failed to fill out the appropriate incident reports and that her statements to the Office of Professional Review ("OPR") were inconsistent with video evidence and witness testimony. According to Simmons, this evidence is probative of Bridges and Robinson's characters for truthfulness. Simmons also argues that he may need this evidence to contradict testimony that, despite a pattern or practice of filling out incident reports after fights, the officers did not fill out an incident report. In addition, he contends that this evidence establishes Bridges and Robinson's motive to lie about the fight and is relevant to a punitive damages analysis because it shows a likelihood that Defendants would repeat the conduct without an award of punitive damages. The Court addresses each of these arguments in turn.

First, looking to Bridges and Robinson's character for truthfulness, Rule 608(b) directly addresses this issue. "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b). Thus, Simmons may not introduce evidence of any of these incidents in order to attack Bridges or Robinson's character for truthfulness. However, 608(b) does allow Simmons to question Bridges or Robinson on these matters during cross-examination. The Court must still conduct a Rule 403 analysis, however, and given how long ago the 2003 and

2005 Merit Board Decisions occurred, questions about those matters would be unduly prejudicial. Moreover, Simmons has more recent misconduct that he can use to impeach Bridges and Robinson's credibility.

The 2015 and 2018 Merit Board Decisions are much more proximate to the present case and relate directly to Bridges and Robinson's characters for truthfulness. In the 2015 Merit Board Decision, the Board decided that Robinson's testimony before the Board and his statements to OPR were inconsistent and that Robinson's version of events was "unbelievable and not credible." Doc. 72-9 at 21. In the 2018 Merit Board Decision, the Board concluded that Bridges' statements to OPR were inconsistent with video evidence and witness testimony. Doc. 72-6 at 4. In response, Defendants question whether the findings in the 2015 and 2018 Merit Board Decisions were accurate, suggesting that a judge reversed the 2015 findings (and subsequent penalty). "[B]efore allowing impeachment of a witness by questioning about specific acts of misconduct that reflect on the witness's character for truthfulness, the Court should be satisfied that a good faith belief exists to believe the misconduct occurred." *Martin v. Jones*, No. 09 C 1690, 2013 WL 3754017, at *2 (N.D. Ill. July 16, 2013). Review of the supporting documents submitted by both parties, however, does not support Defendants' suggestion. The portion of the Robinson deposition to which Defendants cite reveals that Robinson is referring to the 2005 Merit Board Decision, not the 2015 Merit Board Decision, when he testifies that there were "allegations that I was part of some sting that they had going on. But I took it to court, and the judge determined that I was illegally put inside the sting or placed in the sting for no reason. He dismissed the whole case." Doc. 79-3 at 61: 13–19. Robinson does mention current litigation regarding the 2015 Merit Board Decision, *id.* at 60:14–20, but Simmons attaches the Cook County Circuit Court decision upholding the Merit Board's decision, *see* Doc. 72-10. The Merit Board Decisions provide a good faith basis to believe that the misconduct occurred.

Simmons may cross examine Bridges and Robinson about the 2015 and 2018 Merit Board Decisions. He may ask them whether the Merit Board found that they gave inconsistent statements regarding whether excessive force occurred. This information is probative of Bridges and Robinson's credibility under virtually the exact circumstances presented in this case.[1] Other courts in this district have allowed similar evidence. *See, e.g., Martin*, 2013 WL 3754017, at *2–3 (allowing the plaintiff to cross examine a correctional officer regarding "whether the OPR found that she gave a false statement to OPR during the course of an internal investigation and whether the Merit Board affirmed that finding"); *Battle v. O'Shaughnessy*, No. 11 C 1138, 2012 WL 4754747, at *4 (N.D. Ill. Oct. 4, 2012) (allowing the plaintiff to cross examine a police officer regarding a sustained complaint register "because the fact that [the officer] was previously disciplined for providing false information on a police report is probative to her character for truthfulness"); *Casares v. Bernal*, 790 F. Supp. 2d 769, 778–79 (N.D. Ill. 2011) (allowing the plaintiff to question an officer regarding past misconduct where "the accused officer was specifically found to have provided false information by saying that he/she used force in response to the arrestee's attempt to resist arrest, when in reality the arrestee in the other incident had not been resisting"). However, the Court will not allow Simmons to explore the Merit Board Decisions further than that. For example, Simmons may not point out that Bridges was the one who used excessive force in the 2018 Merit Board Decision, and he may not elicit

---

[1] The parties may prepare a limiting instruction for the jury regarding this matter instructing that the jury may only consider this testimony for the purposes of evaluating the credibility of the witness' testimony.

questions regarding the discipline imposed as a result of these decisions. Such information is not relevant to Bridges and Robinson's characters for truthfulness and would merely inflame the jury against them.

Second, to the extent that Defendants seek to admit evidence or testimony regarding a pattern or practice of creating incident reports whenever a fight such as the one at issue in this case occurs, Simmons wants to use evidence of these instances to rebut such evidence and impeach such testimony. Defendants do not respond to this portion of Simmons' motion. Should Defendants open the door by implying that the incident did not occur because there was no incident report or that Cook County Jail correctional officers have a pattern or practice of filing incident reports when incidents such as the one Simmons alleges occur, Simmons may introduce evidence that Bridges and Robinson did not file incident reports in the 2015 and 2018 instances, where excessive force was used. Again, given the prejudicial nature of this evidence, Simmons may not delve into who used excessive force in either of the 2015 or 2018 instances; such detail has no relevance to Simmons' reason for introducing the evidence regarding these matters.

Third, Simmons seeks to admit evidence of Bridges and Robinson's misconduct as evidence of their motive to lie about the fight, because they personally understood the severe consequences of failing to fill out required incident reports. However, the consequences themselves seem motive enough to lie, and, if anything, it seems most likely that the consequences Bridges and Robinson faced due to their prior misconduct would provide motive to fill out an incident report in the first place. In addition, the cases that Simmons cites to support his motive argument are entirely distinguishable from the present case. In *White v. Watson*, the court stated that it would likely allow evidence regarding detainee witnesses' disciplinary history, to show their potential bias against the jail and its employees (who were the defendants). No. 16-cv-560-JPG-RJD, 2018 WL 6181506, at *2 (S.D. Ill. Nov. 27, 2018). And in *Holmes v. City of Chicago*, the court allowed evidence regarding a disciplinary action against the plaintiff because the plaintiff alleged reputation harm and by doing so would "make his character and reputation an issue in the case." No. 09-cv-2481, 2016 WL 6442117, at *8 (N.D. Ill. Nov. 1, 2016). Simmons has not put forward any evidence that Bridges and Robinson's misconduct shows bias against either of the parties in this case, or that Bridges and Robinson have made their character and reputation an issue relevant for trial. Simmons may not admit evidence or testimony regarding Bridges and Robinson's prior misconduct to establish motive.

Finally, Simmons argues that he should be allowed to introduce evidence regarding Bridges and Robinson's misconduct because he seeks punitive damages, and their prior similar misconduct demonstrates a "likelihood that Defendant would repeat the conduct if an award of punitive damages is not made." 7th Cir. Civ. Pattern Jury Instr. 7.28. Allowing Simmons to introduce evidence on this basis would essentially allow Simmons to introduce propensity evidence, which is banned by Rule 404. Fed. R. Evid. 404(b)(1). It simply presents "too great a chance of prejudice and confusion of the issues regarding liability." *Berardi v. Vill. of Sauget, Ill.*, No. 05-898-CJP, 2008 WL 2782925, at *5 (S.D. Ill. July 17, 2008) (denying plaintiff's motion to introduce evidence of prior incidents for the purpose of punitive damages). Thus, the Court will not allow Simmons to introduce evidence or testimony regarding Bridges and Robinson's prior acts of misconduct on this basis.

The Court grants in part, denies in part, and reserves ruling in part on Simmons' motion *in limine* number 7.

**8.      To Grant Unopposed Relief**

Simmons and Defendants have previously agreed to the relief requested in this motion, namely to exclude any evidence, argument, or cross-examination regarding Simmons' disciplinary history during his time at Cook County Jail, to exclude any evidence, argument, or cross-examination regarding any alleged gang affiliation, to exclude any reference to dismissed or terminated defendants in this case, and to exclude any evidence, argument, or cross-examination regarding any arrests, misdemeanor convictions, or convictions that occurred more than ten years ago that Simmons may have.

The Court grants Simmons' motion *in limine* number 8.

**II.      Defendants' Motions *in Limine* [68]**

**1.      To Bar Testimony or Evidence Regarding Alleged Failures to Comply with CCDOC General Orders or Jail Procedures**

Defendants ask the Court to bar any testimony or evidence that they failed to comply with Cook County Jail general orders or procedures, on the basis that such evidence is irrelevant to the question of whether the Defendants violated Simmons' constitutional rights. Simmons acknowledges that Cook County Jail general orders and procedures are irrelevant to the issue of whether Defendants committed a constitutional violation, but argues that the Court should deny this motion because that is not the only reason he may use such evidence.

"42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of . . . departmental regulations and police practices. In other words, the violation of police regulations . . . is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (citations omitted) (internal quotation marks omitted). Therefore, evidence of compliance with general orders and procedures is irrelevant for the constitutional inquiry in Simmons' § 1983 claims.

As to whether this evidence may be relevant to other trial issues—such as punitive damages or potential rebuttal evidence—this is best considered when the evidence and testimony unfold. *See Galvan v. Norberg*, No. 04 C 4003, 2006 WL 1343680, at *2 (N.D. Ill. May 10, 2006) (barring such evidence to prove constitutional violation but noting that it might be relevant for other purposes). In addition, Simmons intends to introduce evidence that Defendants violated jail policies and procedures when they failed to file an incident report after the March 16, 2015 attack to show that Defendants have a strong motive to lie about whether the incident occurred (because they did not file incident reports). Defendants argue that allowing this evidence would unduly prejudice them, because a jury would have trouble separating the rule violation from the constitutional violation. However, unlike in the case upon which Defendants

rely, the rules violations that Simmons seeks to introduce do not overlap with the alleged constitutional violation. *Compare Walker v. Saenz*, 91 CV 3609, 1992 WL 317188, at *4 (N.D. Ill. Oct. 27, 1992) (finding that allowing plaintiff to introduce evidence that his arrest violated police regulations would be unduly prejudicial and could confuse the jury because the arrest was also the basis for the underlying constitutional violation), *with Walsh v. Kaluzny Bros. Inc.*, No. 14 C 3412, 2017 WL 1739905, at *2 n.6 (N.D. Ill. May 4, 2017) (allowing evidence regarding whether defendant complied with police practice regarding written reports because it was relevant to whether the defendant falsified a report and did not relate to whether he conformed with police arrest policies (the subject of the plaintiff's § 1983 claims)). Moreover, if the Court allows such evidence, it will consider a limiting jury instruction.

The Court grants in part and denies in part Defendants' motion *in limine* number 1.

### 2. To Bar Lay Testimony or Non-Disclosed Expert Opinions Regarding Simmons' Diagnoses, Medical Treatment, or Damages

Defendants seek to bar Simmons from offering any non-disclosed expert opinions concerning his diagnoses, medical treatment, or damages. They also seek to prevent him from offering lay testimony regarding his diagnoses, medical treatment, or damages, and from introducing evidence or argument that he did not receive timely medical treatment after the March 16, 2015 incident.

First, with regard to non-disclosed expert testimony, Simmons responds that he does not intend to introduce the testimony of any non-disclosed expert. The only two experts he intends to call are Dr. Sunita Williamson and nurse Elizabeth Santos, which he has already disclosed. Thus, the Court grants this portion of Defendants' motion.

Second, Defendants ask the Court to bar Simmons from introducing lay testimony regarding his medical diagnoses, treatment, or damages. This request is overly broad. Generally, Simmons may testify as to facts within his own knowledge and opinions that he is qualified to give. "'A witness does not need to be a doctor to describe his or her health in general terms.'" *Crecy v. Kankakee Sch. Dist. #111*, No. 15-CV-1014, 2017 WL 6945336, at *4 (N.D. Ill. Feb. 6, 2017) (quoting *Collins v. Kibort*, 143 F.3d, 331, 337 (7th Cir. 1998)). Simmons "may offer testimony about treatment and symptoms, but cannot offer medical opinion testimony. Specifically, [Simmons] cannot testify as to causation, only as to what happened and how it made him feel." *Ratliff*, 2012 WL 5845551, at *6 (citing *Banister v. Burton*, 636 F.3d 828 (7th Cir. 2011); *Meyers v. Nat'l R.R. Passenger Corp.*, 619 F.3d 729 (7th Cir. 2010)). Simmons may testify regarding his own perceptions of his physical health before and after the incident, and he may describe pain that he suffered during those times. He cannot testify regarding the medical causation of his physical health problems or offer a "detailed medical diagnosis." *Crecy*, 2017 WL 6945336, at *4. Without knowing the exact statements Simmons intends to introduce, however, the Court cannot specifically address their admissibility. The Court reserves ruling on this issue until it arises at trial, at which time the parties may re-raise the issue.

Finally, Defendants argue that Simmons should not be able to introduce any evidence or argument that he did not receive timely medical attention because his claims do not concern a

failure to provide adequate medical treatment. This argument makes little sense upon review of the second amended complaint, which contains a count for deliberate indifference to serious medical need. Doc. 30 ¶¶ 26–32. Simmons may introduce relevant evidence and arguments to support the counts of his complaint.

The Court grants in part, reserves ruling in part, and denies in part Defendants' motion *in limine* number 2.

### 3. To Bar Testimony or Argument Regarding the Permanency of Any Injury Simmons Sustained as a Result of the March 16, 2015 Incident

Defendants also ask the Court to exclude any testimony or argument regarding the permanency of any injury that Simmons sustained as a result of the alleged incident, on the basis that such testimony requires an expert and Simmons has not disclosed any expert who could testify regarding such matters. Simmons responds that he should be able to testify regarding the duration and intensity of any pain he experienced, changes in pain over time, and whether he continues to experience pain or other symptoms.

This motion overlaps with Defendants' motion *in limine* number 2. For testimony regarding the permanency of a medical condition, Simmons would need expert medical testimony. *Crecy*, 2017 WL 6945336, at *4. However, Simmons may testify regarding "his own perceptions of his physical health before and after the incident, including recounting any pain experienced during those times." *Id.* He also may discuss "the manifestations of an injury." *Narkiewicz-Laine v. Aer Lingus Ltd.*, No. 14 CV 50098, 2015 WL 5009766, at *4 (N.D. Ill. Aug. 21, 2015). Again, the Court cannot address the admissibility of specific statements until it knows the contents of those statements, and so it reserves ruling on this issue until trial.

The Court reserves ruling on Defendants' motion *in limine* number 3.

### 4. To Bar Reference to Psychological or Mental Injuries that Simmons Sustained as a Result of the March 16, 2015 Incident

Again, overlapping with the two previous motions, Defendants request that the Court bar reference to any psychological or mental injuries that Simmons suffered as a result of the alleged incident. Simmons responds that he should be allowed to testify to the pain and suffering that he experienced as a result of the incident.

Given "'the uniquely subjective nature of pain,'" a witness may rely on "'his own testimony to prove his pain and suffering.'" *Smith v. Nurse*, No. 14-cv-5514, 2016 WL 4539698, at *6 (N.D. Ill. Aug. 31, 2016) (quoting *Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009)). However, the same rules regarding Defendants' motions *in limine* number 2 and 3 apply here: Simmons may not testify as to medical causation or provide a detailed medical diagnosis. *Crecy*, 2017 WL 6945336, at *4. Simmons acknowledges this and states that he does not intend to testify regarding "any psychological or mental injury in a clinical sense." Doc. 76 at 9. As with the other motions, this motion is best addressed when the Court has the specific testimony before it, and so the Court reserves ruling on this issue until trial.

The Court reserves ruling on Defendants' motion *in limine* number 4.

### 5. To Bar Generalized Evidence of an Alleged Officer "Code of Silence" or a "Blue Wall"

Defendants seek to bar generalized evidence of an alleged officer "code of silence" or a "blue wall." Simmons does not oppose this motion.[2]

The Court grants Defendants' motion *in limine* number 5 as to generalized evidence.

### 6. To Bar Argument Regarding a Conspiracy Among the Defendant Officers and Other Officers

Defendants ask the Court to prevent Simmons from making argument that Defendants and/or other correctional officers conspired to cover up the alleged incident on the basis that Simmons has no good faith basis for such an argument. Simmons responds that, to the extent this motion seeks to bar evidence or argument regarding Defendants' relationships, biases and motivations, or the potential that the Defendants are covering for each other, such exclusion would bar relevant evidence and proper argument.

While Simmons acknowledges that he does not allege an independent cause of action for conspiracy, courts in this district consistently allow § 1983 plaintiffs to "explore the possibility that the defense witnesses in this case are biased because of loyalty to one another." *Cooper v. Dailey*, No. 07 C 2144, 2012 WL 1748150, at *4 (N.D. Ill. May 16, 2012); *Owens v. Ellison*, No. 13-cv-7568, 2017 WL 1151046, at *8 (N.D. Ill. Mar. 28, 2017) (noting that courts often "permit plaintiffs to develop the theme that a code of silence existed among the particular officers involved in the case underlying the complaint" (internal quotation marks omitted)); *Martinez v. City of Chicago*, No. 14-cv-369, 2016 WL 3538823, at *7 (N.D. Ill. June 29, 2016) (deciding that "Plaintiff is entitled to cross examine Defendants on their potential biases"). As such, Simmons may explore Defendants' personal relationships, motivations, and biases. However, the Court notes that Simmons has not brought an independent conspiracy claim; to avoid confusing the jury, the Court instructs Simmons to avoid the term "conspiracy" and instead focus on specific allegations of bias against correctional officers with knowledge of this incident. *See Owens*, 2017 WL 1151046, at *8.

The Court grants in part and denies in part Defendants' motion *in limine* number 6.

### 7. To Bar Any Reference to Simmons Being Poor or Indigent

Simmons has no objection to this motion.

The Court grants Defendants' motion *in limine* number 7.

---

[2] Simmons does oppose any attempt to bar him from introducing evidence about Defendants' specific relationships, biases, or motivations. Defendants' motion *in limine* number 5 specifically addresses generalized evidence only, and the Court will address more specific evidence in Defendants' motion *in limine* number 6.

8. **To Bar Any Argument or Inference that Defendants Failed to Call Any Witnesses**

At present, Simmons has no objection to this motion, although he reserves the right to reexamine the issue subject to his ability to subpoena certain witnesses.

The Court grants Defendants' motion *in limine* number 8 as it presently stands and will consider argument from Simmons should circumstances change.

9. **To Bar Reference to Other Publicized Incidents of Police or Correctional Officer Misconduct**

Defendants seek to bar reference to other publicized incidents of police or correctional officer misconduct. This Court interprets this motion as seeking to prevent Simmons from mentioning publicized incidents of misconduct by police or correctional officers other than Defendants, which Simmons does not oppose. To the extent that the motion seeks to address instances of misconduct committed by Defendants, the Court addresses this issue in other motions, namely Simmons' motions *in limine* numbers 6 and 7 and Defendants' motions *in limine* numbers 13 and 14.

To the extent discussed above, the Court grants Defendants' motion *in limine* number 9.

10. **To Bar Reference to the DOJ Letter or Agreed Order in *United States v. Cook County***

Simmons has no objection to this motion.

The Court grants Defendants' motion *in limine* number 10.

11. **To Bar Reference to Indemnification by Cook County and Reference to Defense Counsel as "State's Attorneys"**

Defendants seek to bar reference to whether Cook County has indemnified Defendants on the basis that it is irrelevant. Simmons responds that he should be able to introduce evidence regarding indemnification in response to Defendants' claims of financial hardship.

While evidence of indemnification is generally excluded, once the defendant opens the door by discussing his or her financial status and inability to pay punitive damages, the plaintiff is entitled to cross examine and rebut with evidence that the defendant will be indemnified for some or all compensatory damages. *See Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998); *Christmas v. City of Chicago*, 691 F. Supp. 2d 811, 818–19 (N.D. Ill. 2010); *Delgado v. Mak*, No. 06 C 3757, 2008 WL 4367458, at *4–5 (N.D. Ill. Mar. 31, 2008). Simmons may not volunteer evidence of indemnification but may cross examine or rebut such evidence if Defendants place their finances at issue.

Defendants also seek to bar any reference to their counsel as "Assistant State's Attorneys," "County Lawyers," "County," "State," or "Government." Simmons does not oppose this portion of the motion, and so the Court grants it.

The Court grants in part and denies in part Defendants' motion *in limine* number 11.

### 12. To Bar All Non-Party Witnesses from the Courtroom for Opening Statements and During Testimony of Other Witnesses

Simmons has no objection to this motion.

The Court grants Defendants' motion *in limine* number 12.

### 13. To Bar Reference to Defendants' Past Disciplinary History

Defendants seek to bar any reference to their past disciplinary history. Simmons responds that he intends to introduce instances of misconduct described in his sixth and seventh motions *in limine*. The Court addresses this issue in those motions and, to the extent described in that section of this Statement, the Court denies this motion.

The Court denies Defendants' motion *in limine* number 13.

### 14. To Bar Reference to Any Other Complaints or Lawsuits Filed Against Defendants

Defendants also ask the Court to exclude any reference to other complaints or lawsuits filed against them. Again, Simmons objects to the extent that the relief sought in this motion contradicts the relief sought in his sixth and seventh motions *in limine*, and the Court denies this motion to the extent described in its discussion of Simmons' sixth and seventh motions *in limine*.

The Court denies Defendants' motion *in limine* number 14.

Date: February 22, 2019                                     /s/  Sara L. Ellis_____

13